**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

FLOYD LEE CLEMONS,

    Plaintiff,

vs.                                             CASE NO. 3:05-cv-35-J-32TEM

JOHN E. POTTER, et. al.

    Defendant.

_____

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**[1]

This case came on for trial before the Court on June 4th and 5th, 2007. Plaintiff Floyd Lee Clemons filed suit pursuant to the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et. seq.* The Court has considered the evidence presented, both testimonial and documentary, and has received the benefit of written proposed Findings of Fact and Conclusions of Law submitted by the parties. Following trial, the Court also heard closing argument.

Plaintiff Clemons is employed by the United States Postal Service and since 1995 he has held the position of Supervisor of Distribution Operations (SDO). Beginning in the 1990s the Postal Service certified and then re-certified that Clemons suffered serious health conditions within the meaning of FMLA related to hypertension and general anxiety disorder. For these conditions, Clemons was permitted to take "intermittent leave" from work when his health condition so required. Over the years and continuing to the present, Clemons has

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

utilized FMLA intermittent leave, resulting in his being absent from work on a frequent basis. However, Clemons never exceeded the leave to which he was entitled under FMLA and all of his absences were approved by the Postal Service under FMLA.

Clemons testified that, due to the nature of his chronic conditions, he would only know an hour or two before he was scheduled to report to work that he would be unable to work that day. He would call the nationwide toll-free number to report that he intended to be absent.

Up until June 2002, Clemons had been designated by the Manager of Distribution Operations (MDO), the position immediately superior to Clemon's SDO position, to periodically serve as acting MDO primarily on weekend nights. When Clemons served as acting MDO he was paid a higher wage than his SDO position paid. Beginning in 2002 Clemons' then - MDO, Pamela Denson, declined to allow Clemons to serve as acting MDO. Clemons testified that Denson told him that the reason for this was "due to [his] FMLA absences." This testimony was more or less supported by fellow SDO, Martin Filadro, and others. Ms. Denson denied that she invoked the FMLA when explaining to Clemons why she would not appoint him acting MDO anymore - - she said that she told him it was "based upon his lack of dependability and reliability as well as his communication skills." Denson said that there were other supervisors who were knowledgeable and had better work performances whom she could better "rely and depend on in doing the daily duties..." of the position of acting MDO.

Following Ms. Denson's departure from the MDO position in 2006, subsequent MDOs have also declined to appoint Clemons as acting MDO. In addition, Clemons' "attendance problems" were mentioned by both Ms. Denson and later by MDO Mark Hayes in their annual evaluations of Clemons' work.

### Interference Claim

There is a substantial question whether plaintiff has properly pleaded an FMLA interference claim. Nevertheless, assuming *arguendo* that he has, the Court finds that plaintiff has failed to establish this claim. "To state a FMLA interference claim, a plaintiff must demonstrate that he was entitled, under the FMLA, to a benefit that he was denied." Drago v. Jenne, 453 F.3d 1301, 1306 (11th Cir. 2006). Under FMLA, once an employee returns from qualified FMLA leave, he has the right "'to be restored by the employer to the position of employment held by the employee when the leave commenced'" or to an equivalent position. Id. (citation omitted). The Court holds that on these facts, plaintiff's FMLA right to be restored to his previous position was satisfied when the Postal Service allowed Clemons to resume his SDO position with no loss of pay or benefits. The Court does not read the FMLA as requiring the Postal Service, as part of its obligation to restore plaintiff to his previous position, to assure him that he will be named acting MDO on some specified number of future occasions. "Acting MDO" is neither a specified part of Clemons' SDO job description nor is it an established benefit of holding the SDO position. This is further demonstrated by the evidence which showed that there were a number of different SDOs who, at the discretion of the MDO, could be appointed acting MDO. Moreover, the evidence showed that at times

3

the Postal Service did not appoint an acting MDO when the MDO could not be present. There was no guarantee that Clemons would be selected on any scheduled or predictable basis.   Although I acknowledge that this issue is not free from all doubt and that the FMLA regulations provide some support for both sides of this argument, I conclude that the acting MDO designation was not an emolument of Clemons' SDO position. See 29 U.S.C. § 2614 (a)(3)(B) ("[n]othing in this section shall be construed to entitle any restored employee to - ... any right, benefit or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave"); Forakar v. Apollo Group, Inc., No. CV-04-2614-PHX-DGC, 2007 WL 1546099 at *4 (D. Ariz.) 2007; Cf. 29 C.F.R. § 825.215 (c)(1) ("[a]n employee is entitled to be restored to a position with the same or equivalent pay premiums, such as a shift differential"); 29 C.F.R. § 825.215 (f) ("[t]he requirement that an employee be restored to the same or equivalent job with the same or equivalent pay, benefits, and terms and conditions or employment does not extend to de minimis or intangible, unmeasurable aspects of the job"); 29 C.F.R. § 825.216 (a)(2) "(if a position on, for example, a night shift has been filled by another employee, the employee is entitled to return to the same shift on which employed before taking FMLA leave"); 29 C.F.R. § 825.117 ("[e]mployees needing intermittent FMLA leave or leave on a reduced leave schedule must attempt to schedule their leave so as not to disrupt the employer's operations.  In addition, an employer may assign an employee to an alternative position with equivalent pay and benefits that better accommodates the

employee's intermittent or reduced leave schedule").[2]

## Retaliation Claim

To succeed on a FMLA retaliation claim, "an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right." Strickland v. Water Works and Sewer Bd. of City of Birmingham, 239 F.3d 1199, 1207 (11th Cir. 2001), (citing King v. Preferred Technical Group, 166 F.3d 887, 891 (7th Cir. 1999)). "[A] plaintiff bringing a retaliation claim faces the increased burden of showing that his employer's actions 'were motivated by an impermissible retaliatory or discriminatory animus.'" Strickland, 239 F.3d at 1207 (citing King, 166 F.3d at 891). The elements of a claim of FMLA retaliation require the employee to prove (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment decision; and, (3) the decision was causally related to the protected activity. Strickland, 239 F.3d at 1207 (citing, Parris v. Miami Herald Publishing Co., 216 F.3d 1298, 1301 (11th Cir. 2000)).

Plaintiff does not contend that negative written evaluations, the Postal Service's requirement that plaintiff provide "return to work" certifications, and the disciplinary letters of warnings issued to him constituted adverse employment decisions. Indeed, there is no evidence that these actions resulted in any loss of tangible employment benefits. Rather, plaintiff focuses on the Postal Service's decision not to allow him to

---

[2]Any other alleged violation by the Postal Service, such as improperly requiring Clemons to provide certifications before he could return to work, were at most "technical violations of the FMLA" and not actionable. See Drago, 453 F.3d at 1307.

serve as acting MDO. This is a close question because serving as acting MDO is not a stated benefit of the SDO position and there is no contention that the Postal Service ever failed to accord plaintiff any of the benefits of the SDO position upon his return from FMLA leave. However, for purposes of this decision, the Court assumes *arguendo* that the Postal Service's decision not to allow Plaintiff to serve as acting MDO was an adverse employment action.[3]

The next question is whether this adverse employment decision was causally related to plaintiff's invocation of his rights under FMLA or his complaints to his supervisors about not being accorded proper treatment under FMLA. There was direct evidence in the form of Clemons' testimony, supported to a degree by other witnesses, that Denson, his MDO beginning in 2002, told Clemons that she would no longer allow him to serve as acting MDO because of his FMLA absences. While Denson denies saying this, she did testify that Clemons' lack of "dependability and reliability" were factors in her decision. In this context, this phrase very well could have referred to Denson's belief that Clemons use of his certified FMLA leave made him less "dependable and reliable." While Denson also testified that, after she became MDO, she simply concluded that there were others who were more knowledgeable and better able to serve as acting MDO, the Court again assumes *arguendo* that the

---

[3]This may seem inconsistent with the Court's earlier decision on the interference claim. However, in the context of a retaliation claim, if plaintiff can show that the Postal Service denied him the ability to be acting MDO (with a resulting pay differential) <u>because</u> he exercised his right to take FMLA leave, the loss of the acting MDO opportunity would arguably be an adverse employment action.

preponderance of the evidence demonstrates that there was a causal relationship between Clemons' use of his approved FMLA leave and his complaints about the way that the Postal Service handled his FMLA leave and the Postal Service's decision not to allow Clemons to serve as acting MDO.[4]

Under the FMLA, 29 U.S.C. § 2617 (a)(1)(A), a plaintiff may recover actual damages.  Here, plaintiff's theory was that the differential salary that plaintiff would have been paid as an acting MDO as compared to his salary when he was performing his SDO job was his measure of damages; plaintiff claimed no other damages.  While in theory this measure of damages might be appropriate, plaintiff's ability to recover damages depends, of course, on his ability to prove them.

Plaintiff's Exhibit 9 was a three page document handwritten by plaintiff attempting to list his damages for the years 2002 through 2007.  However, there are serious flaws in this document.  First, the document on its face simply has unsupported numbers which, added together, total just over $36,000.00.  Plaintiff introduced no

---

[4] At closing argument the Court questioned whether, under the FMLA, the Postal Service would be permitted to consider regular attendance as being a requirement of the job of acting MDO (given that the very nature of the "acting" position is to replace the MDO who will not be present that day) and whether, in this circumstance, the Postal Service was required by FMLA to allow plaintiff to serve as acting MDO when the nature of his illness was such that he often times was only able to give an hour or two notice that he would not be at work that day.  Plaintiff's view is that there is no provision in the FMLA to consider the employer's needs or burdens in this circumstance.  The Postal Service took a contrary view.  Although the Court finds this to be an interesting question, because of the Court's disposition of this case, the Court need not address it.  See Honeycutt v. Baltimore County, Md., No. JFM-06-0958 2006 WL 1892275, at *3 (D. Md. 2006); St. Hilaire v. Minco Products, Inc., 288 F.Supp.2d 999, 1008-09 (D. Minn. 2003.); Covey v. Methodist Hospital of Dyersburg, Inc., 56 F.Supp.2d 965, 968 (W.D. Tenn. 1999); 29 U.S.C. § 2601 (b)(3); 29 C.F.R. §§ 825.115, 825.214 (b).

documentation to support this summary of damages. He introduced no payroll records, no salary scales or anything of the sort. As the factfinder, I find this document in and of itself is insufficient to prove plaintiff's damages. See United States v. Richardson, 233 F.3d 1285, 1294 (11th Cir. 2000) (factfinder not required to accept summaries as true).

The only other damages evidence adduced by plaintiff came from his own testimony in which he tried to explain the numbers on Plaintiff's Exhibit 9. Plaintiff assumed that, of the available days that he could have been appointed acting MDO, he would have been appointed 25% of the time. He then stated that he had calculated the differential "straight from my paycheck." When the Court asked whether there was any backup documentation to support these calculations, plaintiff's counsel replied that there was not but that "I do think [plaintiff] can testify as to what... his own pay was and what the differential would be." However, plaintiff's testimony about the differential between the pay of an SDO and an acting MDO was confusing at best. Moreover, the methodology by which plaintiff calculated the differential was different than the methodology testified to by the Postal Service's manager of finance, Lane Guthrie. Plaintiff's counsel suggested during closing argument that, if the Court accepted Mr. Guthrie's testimony as to how the differential should be calculated, the Court could simply make the calculations itself, using Mr. Guthrie's pay table (Government's Exhibit 18).[5] But, of course, it is not the Court's function or prerogative *sua sponte* to make its

---

[5] In truth, the Court also found Mr. Guthrie's testimony to be less than satisfactory because it turned out that his area of expertise, finance, was not what was required.

own calculation of plaintiff's damages.

While plaintiff was not required to prove the amount of damages with precision, the Court was looking for more substance in the calculations. Because of the inherent difficulty of knowing when management would use its discretion to appoint Clemons as acting MDO[6], proof of these damages would always be difficult. Even if plaintiff has overcome this difficulty by estimating the percentage of time he would have been appointed as acting MDO, his evidence concerning the differential in pay between the two positions and how much plaintiff has actually lost as a result of not being appointed acting MDO is simply deficient; as the factfinder I have no confidence in plaintiff's evidence. Put another way, if I were to try to award an amount of damages, I would be guessing. Plaintiff has suffered a failure of proof on damages.

It is hereby **ORDERED**

Judgment will be hereby entered in favor of defendants John E. Potter and the United States Postal Service and against the plaintiff, Floyd Lee Clemons.[7]

**DONE AND ORDERED** in Jacksonville, Florida, this 11th day of June, 2007.

_Timothy J. Corrigan_
TIMOTHY J. CORRIGAN
United States District Judge

md.
Copies to:
Counsel of Record

---

[6] The evidence was that the Postal Service did not always appoint an acting MDO and that there were other well-qualified SDOs who also could have been appointed MDO at any time.

[7] Because of the Court's decision, the Court need not reach the liquidated damages issue. Moreover, plaintiff did not seek injunctive relief under the FMLA so the Court does not address whether he would otherwise be entitled to such relief.